Filing # 126083718 E-Filed 05/03/2021 11:47:24 PM

### IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
### IN AND FOR POLK COUNTY, FLORIDA
### SMALL CLAIMS DIVISION

**Michael Trueheart,**

    *Plaintiff,*

    v.

**Charter Communications, Inc.,**
**Waypoint Resource Group, LLC,**
**The CBE Group, Inc., and**
**Amsher Collection Services, Inc.,**

    *Defendants.*

---

Case No.: _____

Division: _____

Ad Damnum: **$7,000 + Atty Fees & Costs**

### JURY TRIAL DEMANDED

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Michael Trueheart,** ("**Mr. Trueheart**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Charter Communications, Inc.** ("**Charter**"), **Waypoint Resource Group, LLC** ("**Waypoint**"), **The CBE Group, Inc.** ("**CBE**") and **Amsher Collection Services, Inc.** ("**Amsher**"), (collectively, "**Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

1.    This is an action brought by Mr. Trueheart against the Defendants for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**"), the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes, *et. seq.* ("**FCCPA**") and the Fair Credit Reporting Act, 15 U.S.C. §1681, *et. seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2.    Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCCPA, Section 559.77(1), Florida Statutes, FCRA, 15 U.S.C. § 1681p and Section 34.01, Florida Statutes.

3.     The Defendants are subject to the provisions of the FDCPA, the FCCPA, the FCRA and are subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4.     Venue is proper in Polk County, Florida, pursuant to Section 47.051, Florida Statutes, because the acts complained of were committed and / or caused by the Defendants within Polk County.

## PARTIES

5.     **Mr. Trueheart** is a natural person residing in Winter Haven, Polk County, Florida and is a "consumer" as defined by the FDCPA and FCCPA, 15 U.S.C. § 1692a(3), FCRA and Section 559.55(8), Florida Statutes, respectively.

6.     **Charter** is a Delaware corporation with a primary business address of **400 Atlantic Street, Stamford, California 06901**.

7.     Charter is registered to conduct business in the state of Florida, where its registered agent is **Corporation Service Company, 1201 Hayes Street, Tallahassee, Florida 32301.**

8.     **Waypoint** is a Pennsylvania limited company with a primary business address of **301 Sundance Parkway, Round Rock, Texas 78663.**

9.     Waypoint is registered to conduct business in the state of Florida where its registered agent is **Cogency Global Inc., 115 North Calhoun Street, Suite 4, Tallahassee, Florida 32301.**

10.     Waypoint is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("CCA") and holds Florida Consumer Collection Agency license number **CCA9902704. SEE PLAINTIFF'S EXHIBIT A.**

11.     As a CCA licensee, Waypoint knows or should know the requirements of consumer collection statutes, including the FDCPA and FCCPA.

12.     **CBE** is an Iowa corporation with a primary business address of **1309 Technology Parkway, Cedar Falls, Iowa 50613.**

13.     CBE is registered to conduct business in the state of Florida where its registered agent is **Corporation Service Company, 1201 Hayes Street, Tallahassee, Florida 32301.**

14.     CBE is not registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("CCA").

15.     CBE knows or should know the requirements of consumer collection statutes since they conduct business in Florida, including the FDCPA and FCCPA.

16.     **Amsher** is an Alabama corporation with a primary business address of **4524 Southlake Parkway, Suite 15, Hoover, Alabama 35244.**

17.     Amsher is registered to conduct business in the state of Florida where its registered agent is **Corporation Service Company, 1201 Hayes Street, Tallahassee, Florida 32301.**

18.     Amsher is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("CCA") and holds Florida Consumer Collection Agency license number **CCA0900419.**

19.     Amsher knows or should know the requirements of consumer collection statutes since they conduct business in Florida, including the FDCPA and FCCPA

20.     Waypoint, CBE and Amsher are "debt collectors" within the meaning of the FDCPA, 15 U.S.C. §1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that they use postal mail, an instrumentality of commerce, both interstate and within the state of Florida, for their businesses, the principal purposes of which are the collection of debts. Alternatively, the Defendants regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## **FACTUAL ALLEGATIONS**

21.    At some time prior to September 2019, Mr. Trueheart contracted with Charter to provide internet and cable services to his primary residence.

22.    During the time services were provided, Mr. Trueheart became unsatisfied with the quality of services provided by Charter.

23.    Mr. Trueheart made multiple complaints to Charter regarding the connectivity issues he was experiencing.

24.    Charter agreed to refund a portion of the money paid for services, however, Mr. Trueheart never received this compensation.

25.    In September 2019, Mr. Trueheart suspended Charter's services.

26.    Mr. Trueheart timely returned Charter's equipment.

27.    Mr. Trueheart disputed his final bill and sent a payment in accord and satisfaction with what he believed to be fair payment for services rendered. **SEE PLAINTIFF'S EXHIBIT B.**

28.    On information and belief, Charter accepted and deposited Mr. Trueheart's final payment in accord and satisfaction.

29.    Despite this, Charter later claimed $126.24 remained unpaid (the "**Debt**" or "**alleged Debt**").

30.    Mr. Trueheart did not receive further communication directly from Charter regarding his final payment or any notice of an amount past due after Mr. Trueheart sent September his 2019 payment.

31.    Because the alleged Debt arose from services which were for family, personal, or household purposes, specifically, *cable and internet services*, the Debt meets the definition of

"debt" within both the FCCPA, 15 U.S.C. § 1692a(5), and FCCPA, Section 559.55(6), Florida Statutes.

32.     It was clear from Mr. Trueheart's actions and communications that any alleged amount still owed after this final payment was disputed.

33.     At some point after September 2019, Charter assigned the Debt to Waypoint.

### Placement of the Debt With Waypoint

34.     On January 17, 2020, Waypoint mailed a collection letter regarding the debt stating it was collecting on behalf of Charter. **SEE PLAINTIFF'S EXHIBIT C.**

35.     On or about February 3, 2020, Mr. Trueheart disputed the debt to Waypoint, including Mr. Trueheart's attorney's contact information. **SEE PLAINTIFF'S EXHIBIT D.**

36.     Charter communicated information to Waypoint, including the amount, the original creditor, the date of delinquency, the nature of the Debt, and Mr. Trueheart's personal contact information.

37.     Mr. Trueheart never consented to the disclosure of information about the Debt to Waypoint – an unrelated third party.

38.     Waypoint are not attorneys for Charter, nor has the Debt been reduced to judgment at any point, nor is Waypoint a CRA.

39.     Upon information and belief, when assigning the Debt to Waypoint for collection, Charter did *not* disclose to Waypoint that the Debt was disputed, despite the fact Charter knew it was disputed since Mr. Trueheart disputed his bill directly with Charter.

40.     At no point did Mr. Trueheart indicate to Charter or any of its agents he no longer disputed the Debt.

### Waypoint Reports Disputed Debt Without Disclosure of Dispute

41.     In or around February 2020, Waypoint reported the Debt to Equifax Information Services, LLC ("**Equifax**") and Trans Union, LLC ("**Trans Union**"),  nationwide Consumer Reporting Agencies ("**CRA**"). **SEE PLAINTIFF'S EXHIBIT E.**

42.     In its reporting to Equifax and Trans Union, Waypoint made no disclosure the Debt was disputed or even *previously* disputed by Mr. Trueheart.

43.     On March 3, 2020, Mr. Trueheart again disputed the debt with Waypoint. **SEE PLAINTIFF'S EXHIBIT F.**

44.     Had Charter communicated to Waypoint that the Debt was disputed, Waypoint would have, upon information and belief, disclosed in its reporting to TransUnion the Debt was disputed, in order to comply with 15 U.S.C. § 1692e(8).

45.     In essence, Charter and Waypoint were forcing Mr. Trueheart to spend his time and effort repeatedly disputing a debt merely so that it would remain labeled as such, even though he has a right under the FDCPA to have debt collectors label a debt as disputed, and keep it so labeled, after one notice. See 15 U.S.C §1692e(8).

46.     Having already been reported to the CRAs at least once before, any consumer would reasonably be concerned that Waypoint, a regular furnisher of information to nationwide CRAs, would re-report the debt as *undisputed* unless he spent the time and effort to re-dispute the account.

47.     Charter and Waypoint know that the more time a consumer has to spend dealing with a collection effort, the more likely he is to pay the debt, even if disputed, and especially if it is relatively small-dollar.

48.     As such, Charter knew, or should have known, that requiring a consumer to re-dispute the same debt would incentivize consumers to simply pay the debt, even if not actually owed.

49.     The Defendants had no right to determine on their own whether the dispute was meritorious, since the FDCPA requires a debt collector to communicate a debt is disputed once known. See 15 U.S.C. § 1692e(8).

50.     The FDCPA at § 1692e(8) "does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt." *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010) ("[A] consumer can dispute a debt for 'no reason at all ….'").

51.     Charter and Waypoint had no right to unilaterally nullify Mr. Trueheart's previous dispute. *See, e.g., Evans v. Portfolio Recovery Associates*, 889 F. 3d 337 (7th Cir 2018).

52.     Most commercially used credit scores, including most versions of FICO, the most commonly-used credit scores in the United States, will disregard a medical collection tradeline reported with a compliance condition code ("CCC") indicating the consumer disputes the debt.

53.     Thus, Waypoint's failure to report a disputed debt as disputed caused unfair, and undue, damage to Mr. Trueheart's credit report and scores. "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio Recovery Associates, LLC*, 889 F. 3d 337 (7th Cir. 2018).

54.     The impact on a consumer's credit score does not need to be significant to be material pursuant to the FDCPA. *Burr v. Evergreen Prof'l Recoveries, Inc.*, No. C19-949RSM (W.D. Wash. July 24, 2020).

**Placement of the Debt With CBE**

55.     In or around April 2020, Charter recalled the Debt from Waypoint and re-assigned it to CBE for collection.

56.     Charter communicated information to CBE, including the amount, the original creditor, the date of delinquency, the nature of the Debt, and Mr. Trueheart's personal contact information.

57.     Mr. Trueheart never consented to the disclosure of information about the Debt to CBE – an unrelated third party.

58.     CBE are not attorneys for Charter, nor has the Debt been reduced to judgment at any point, nor is CBE a CRA.

59.     Upon information and belief, when assigning the Debt to CBE for collection, Charter did *not* disclose to CBE that the Debt was disputed, despite the fact Charter knew it was disputed since Waypoint, its agent, had communicated Mr. Truehart disputed the Debt back in February and March 2020.

60.     Charter also had a direct dispute from Mr. Trueheart in September 2019.

61.     At no point did Mr. Trueheart indicate to Charter or any of its agents he no longer disputed the Debt.

62.     On May 1, 2020, CBE mailed Mr. Trueheart a collection letter indicating they were collecting a debt on behalf of Charter. **SEE PLAINTIFF'S EXHIBIT G.**

63.     The May 1, 2020 letter states "Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid." *Id.*

64.     Thereafter, Mr. Trueheart, for the fourth time, disputed owing the debt claimed by Charter.

### Placement of the Debt With Amsher

65.     At some time between May 2020 and January 2021, Charter recalled the Debt from CBE and re-assigned it to Amsher for collection.

66.     Charter communicated information to Amsher, including the amount, the original creditor, the date of delinquency, the nature of the Debt, and Mr. Trueheart's personal contact information.

67.     Mr. Trueheart never consented to the disclosure of information about the Debt to Amsher – an unrelated third party.

68.     Amsher are not attorneys for Charter, nor has the Debt been reduced to judgment at any point, nor is Amsher a CRA.

69.     Upon information and belief, when assigning the Debt to Amsher for collection, Charter did *not* disclose to Amsher that the Debt was disputed, despite the fact  Charter knew it was disputed since Waypoint, its agent, had communicated Mr. Truehart disputed the debt back in February and March 2020.

70.     Charter also had a direct dispute from Mr. Trueheart in September 2019.

71.     At no point did Mr. Trueheart indicate to Charter or any of its agents he no longer disputed the Debt.

72.     On January 2, 2021, Amsher mailed Mr. Trueheart a collection letter indicating they were collecting a debt on behalf of Charter. **SEE PLAINTIFF'S EXHIBIT H.**

73.     The January 2, 2021 letter states "Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid." *Id.*

74.     Precedent in this circuit establishes a debt collector does not have any right to rely on a creditor's representation as a stand-alone defense to violation of the FDCPA, a strict-liability statute; see O*wen v. I.C. System, Inc.*, 629 F.3d 1263 (11th Cir. 2011).

75.     On February 11, 2021, an agent from Amsher contacted Mr. Trueheart directly, attempting to collect the Debt.

76.     This call came after Mr. Trueheart had already communicated that he was represented by the undersigned law firm regarding this Debt.

**Amsher Illegally Obtains Plaintiff's Credit Report**

77.     On January 1, 2021, Amsher requested a consumer credit report on Mr. Trueheart from Trans Union.

78.     This request was recorded by Trans Union. **SEE PLAINTIFF'S EXHIBIT I.**

79.     To lawfully request a *Credit Bureau Report* ("**CBR**") from a CRA, a debt collector must be collecting a debt which arises from a *Credit Transaction* involving the consumer. *See* 15 U.S.C. §1681b(a)(3)(A);*Pigg v. Fair Collections & Outsourcing, Inc.*, No. 1:16-CV-01902-JMS-DML, 2017 WL 3034266, at *4 (S.D. Ind. July 18, 2017) (holding that a debt collection agency did not have a permissible purpose because, even where a debt exists, a "credit transaction is a necessary prerequisite" for § 1681b(a)(3)(A)).

80.     A *Credit Transaction* involving the consumer is one in which the consumer voluntarily participates and enters into an agreement to receive goods or services in advance of payment, with the consent of both parties. *See Pintos v. Pacific Creditors Association*, 504 F. 3d

792, 798 (9th Cir. 2007); *Miller v. Trans Union LLC*, No. 06 C 2883 at *7 (N.D. Ill. Feb. 28, 2007); *Rodriguez v. Experian Info. Sols., Inc.*, Case No. C15-01224RAJ, at *9 (W.D. Wash. Jul. 25, 2016).

81.    No transaction between Mr. Trueheart and Charter constituted an extension of credit, *i.e.*, one in which the consumer voluntarily entered into an agreement to receive goods or services in advance of payment.

82.    Whether the alleged Debt arose from cable or internet services, the amount was due and owing *immediately*.

83.    Given this lack of a deferred payment arrangement, the Debt therefore did not arise from a credit transaction involving the consumer.

84.    Amsher thus lacked a permissible purpose for obtaining a credit report regarding Mr. Trueheart.

85.    Amsher knew, or should have known, the nature of the underlying Debt, but requested a CBR regarding Mr. Trueheart regardless.

86.    To obtain a CBR from a CRA, the requesting party must certify its permissible purpose to the CRA.

87.    Amsher falsely certified to Trans Union that it had a permissible purpose under the FCRA to obtain Mr. Trueheart's report.

88.    Amsher's request for Mr. Trueheart's credit report was in connection with its collection of the Debt.

89.    The Trans Union report contained information which Amsher used, or could have used, to collect the Debt from Mr. Trueheart.

90.     Mr. Trueheart has been damaged in that his personal and highly confidential information has been obtained an entity with whom he did not consent and had no other permissible purpose to obtain such information.

91.     Mr. Trueheart has hired the aforementioned law firm to represent him in this matter and is obligated to pay its reasonable fees or has assigner his right to fees and costs to such firm.

**COUNT I**
**VIOLATIONS OF THE FDCPA - Waypoint only**

92.     Mr. Trueheart adopts and incorporates paragraphs 1 – 91 as if fully stated herein.

93.     Waypoint, as agent for Charter, violated **15 U.S.C. § 1692e and 1692e(10)** when it made false representations about the disputed Debt when it reported to TransUnion, one of the largest nationwide consumer CRAs in the country, a disputed debt was not disputed.

94.     Waypoint, as agent for Charter, violated **15 U.S.C. § 1692e(2)(a)** when it made false representations about the character and legal status of a debt when it reported to Trans Union, one of the largest nationwide consumer CRAs in the country, a disputed debt was not disputed.

95.     Waypoint, as agent for Charter, violated **15 U.S.C. § 1692e(8)** when it communicated credit information to Trans Union, one of the largest nationwide consumer CRAs in the country, credit information it knew was disputed, or which it reasonably should have known was disputed, without disclosure of dispute.

**WHEREFORE,** Mr. Trueheart respectfully requests this Honorable Court enter judgment in his favor against Waypoint for:

a.      Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FDCPA - CBE only

96.     Mr. Trueheart adopts and incorporates paragraphs 1 – 91 as if fully stated herein.

97.     CBE, as agent for Charter, violated **15 U.S.C. § 1692e and 1692e(10)** when it made false representations about the a debt when it sent a communication in connection with the collection of a debt which claimed, Mr. Trueheart needs to dispute the debt or they will assume the debt is valid despite Mr. Trueheart's previous disputes.

98.     CBE, as agent for Charter, violated **15 U.S.C. § 1692f(1)** when it claimed a debt of $126.24 was owed, despite being in possession Charter accepting final payment in accord and satisfaction.

**WHEREFORE,** Mr. Trueheart respectfully requests this Honorable Court enter judgment in his favor against CBE for:

a.      Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE FDCPA - Amsher only

99.     Mr. Trueheart adopts and incorporates paragraphs 1 – 91 as if fully stated herein.

100.    Amsher, as agent for Charter, violated **15 U.S.C. § 1692e and 1692e(10)** when it made false representations about the a debt when it sent a communication in connection with the collection of a debt which claimed, Mr. Trueheart needs to dispute the debt or they will assume the debt is valid despite Mr. Trueheart's previous disputes.

101.    Amsher, as agent for Charter, violated **15 U.S.C. § 1692f(1)** when it claimed a debt of $126.24 was owed, despite being in possession Charter accepting final payment in accord and satisfaction.

**WHEREFORE,** Mr. Trueheart respectfully requests this Honorable Court enter judgment in his favor against Amsher for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE FCCPA - Charter Only

102.    Mr. Trueheart adopts and incorporates paragraphs 1 –91 as if fully restated herein.

103.    Charter violated Section **559.72(9)**, when it claimed a debt of $126.24 was owed, despite being Charter accepting final payment in accord and satisfaction.

104.    Charter violated Section **559.72(6)** when it communicated information about the Debt to Waypoint, CBE, Amsher and failing to disclose the Debt was disputed, despite knowing of Mr. Trueheart's dispute since at least September 2019.

105.    By their conduct, Charter is liable for the above-stated violations of the FCCPA.

**WHEREFORE,** Mr. Trueheart respectfully requests this Honorable Court enter judgment against Charter for:

a.    Statutory damages of **$1,000** pursuant to Section 559.77(2), Florida Statutes;

b.    Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.    Equitable relief enjoining Charter from any further violation of the FCCPA;

d.   Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

e.   Such other relief that this Court deems just and proper.

## COUNT V
## VIOLATIONS OF THE FCCPA - Waypoint Only

106.   Mr. Trueheart adopts and incorporates paragraphs 1 –91 as if fully restated herein.

107.   Waypoint violated Section **559.72(6)**, Florida Statutes, when it disclosed the existence of a debt known to be disputed by the consumer, but failed to disclose that the Debt was disputed, when reported the debt to TransUnion in February 2020.

108.   Waypoint made its reports with reckless disregard for if the Debt was disputed or not and thus made its report with malice; as such, Mr. Trueheart's state law claim is not pre-empted by the FCRA.

109.   "Malice can be established by evidence showing the defendant made a false statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Long v. Pendrick Capital Partners II, LLC*, Case No.: GJH-17-1955 (D. Md. Mar. 18, 2019), quoting *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964); *see also Capital-Gazette Newspapers, Inc. v. Stack*, 293 Md. 528, 445 A.2d 1038, 1043-45 (Md.1982) (adopting the Supreme Court's definition of malice in the context of Maryland common law defamation cases).

110.   The actions of Waypoint were willful and intentional, or done with a reckless disregard for the consumer's rights under the FCCPA.

111.   By their conduct, of Waypoint and Charter are liable for the above-stated violations of the FCCPA.

**WHEREFORE,** Mr. Trueheart respectfully requests this Honorable Court enter judgment against Charter and Waypoint for:

a.   Statutory damages of **$1,000** pursuant to Section 559.77(2), Florida Statutes;

b.   Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.   Equitable relief enjoining Waypoint and Charter from any further violation of the FCCPA concerning the collection of the Debt from Mr. Trueheart;

d.   Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

e.   Such other relief that this Court deems just and proper.

### COUNT VI
### VIOLATIONS OF THE FCCPA- Amsher only

112.   Mr. Trueheart adopts and incorporates paragraphs 1 – 91 as if fully restated herein.

113.   Amsher violated Section **559.72(9)**, Florida Statutes, when it asserted a right that does not exist, specifically, the right to obtain a credit report from Trans Union regarding Mr. Trueheart without permissible purpose to do so, when such actions are explicitly prohibited by federal law.

114.   Amsher violated Section **559.72(18)**, Florida Statutes, when it communicated over the phone with Mr. Trueheart directly after he notified them that he was represented by counsel regarding the debt.

115.   Amsher's actions were knowing and intentional, as Amsher has been sued in the past for similar conduct.

**WHEREFORE,** Mr. Trueheart respectfully requests that this Honorable Court enter judgment against Amsher for:

a.   Statutory damages of **$1,000** pursuant to Section 559.77(2), Florida Statutes;

b.   Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.   Reasonable costs and attorneys' fees pursuant to section 559.77(2), Florida
Statutes; and,

d.   Such other relief that this Court deems just and proper.

## COUNT VII
## VIOLATIONS OF THE FCRA-Amsher Only

116.   Mr. Trueheart adopts and incorporates paragraphs 1 – 91 as if fully restated herein.

117.   Amsher violated **15 U.S.C. § 1681b(f),** either willfully and intentionally or
recklessly and without regard for a consumer's rights, when it requested a credit report from Trans
Union regarding Mr. Trueheart without a permissible purpose to obtain the report.

118.   Amsher's conduct renders it liable under the FCRA to Mr. Trueheart in a statutory
amount up to $1,000 per incident.

**WHEREFORE,** Mr. Trueheart respectfully requests that this Court enter judgment against
Amsher for:

a.   The greater of Mr. Trueheart's actual damages or statutory damages of **$1,000** per
violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), and / 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §
1681n(a)(3) and / or 15 U.S.C. § 1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Trueheart demands a jury trial on all issues so triable.

Respectfully submitted **May 3, 2021** by:

SERAPH LEGAL, P. A.

*/s/ Bridget L. Dow*
Bridget L. Dow
Florida Bar No.: 1022866
BDow@seraphlegal.com
*/s/ Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
tbonan@seraphlegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
Counsel for Plaintiff

## ATTACHED EXHIBIT LIST

| | |
|---|---|
| A | Waypoints' CCA License |
| B | Plaintiff's Dispute to Charter- September 19, 2019 |
| C | Waypoint's Collection Letter- January 17, 2020 |
| D | Plaintiff's dispute letter to Waypoint- February 3, 2020 |
| E | Credit Karma alert regarding Waypoint reporting Debt |
| F | Plaintiff's dispute through Trans Union to Waypoint March 9, 2020 |
| G | CBE Collection Letter- May 1, 2020 |
| H | Amsher Collection Letter- January 2, 2021 |
| I | Plaintiff's Trans Union Consumer Disclosure-January 2, 2021 -Excerpt Inquiries |

## EXHIBIT A
## Waypoint's Florida Consumer Collection Agency License Record

3/18/2021                                        License Details

# REAL SYSTEM
## Regulatory Enforcement and Licensing

Florida Office of Financial Regulation

Login

**License Details**

Press "Previous Record" to display the previous license.

Press "Next Record" to display the next license.

Press "Search Results" to return to the Search Results list.

Press "New Search Criteria" to do another search of this type.

Press "New Search" to start a new search.

| License Number: CCA9902784 | | Current Date: 03/18/2021 03:04 PM |
|---|---|---|
| Name: | WAYPOINT RESOURCE GROUP, LLC | |
| License Type: | Consumer Collection Agency | |
| License Status: | Current Active Registration | |
| License Status Effective Date: | 11/05/2020 | |
| Expiration Date: | 12/31/2021 | |
| Original Date of Licensure: | 04/23/2012 | |

**Addresses**

| Business Main Address | Address | |
|---|---|---|
| | | 301 SUNDANCE PARKWAY |
| | | ROUND ROCK , TX |
| | | WILLIAMSON |
| | | 78681 |
| | | US |
| | | View on a map |
| | Phone Number: | (512) 236-3200 |
| Mailing Address | Address | |
| | | P.O. BOX 6588 |
| | | ROUND ROCK , TX |
| | | WILLIAMSON |
| | | 78683-6588 |
| | | US |
| | | View on a map |

© 2018, MicroPact Version 11.5.2.2 (Build 233)

# EXHIBIT B
## Plaintiff's Dispute to Charter- September 19, 2019

Spectrum
PO Box 790450
Saint Louis, Mo 63179-0450

09/14/19

Ref: Account #0034409132-03

To Whom It May Concern:

I canceled my service on 09/12/19 due to the fact my service was never working properly even after having the service tech come out and try to increase the signal. Also Spectrum interrupted my service by not applying my payment correctly.

This is my full and final payment for service up to 09/12/19 pro-rated with an outstanding balance of $210.42. Which works out to $7.01 per day for a total amount owed $84.17.

This check is acceptance as full and final payment.

Sincerely

Mike Trueheart

# EXHIBIT C
## Waypoint's Collection Letter- January 17, 2020



PO Box 8588
Round Rock, TX 78683-8588

| ACCOUNT INFORMATION | |
|---|---|
| **DATE** | **ACCOUNT #** |
| January 17, 2020 | 5313737 |
| **Client Name:** | Charter Communications |
| **Original Creditor:** | Charter Communications |
| Total Balance Due: | $126.24 |



Dear Mike Trueheart,

Bright House Networks is now Charter Communications, home of the Spectrum brand of products and services.

This notice regarding your account with Charter Communications is being sent to you by Waypoint Resource Group. Charter Communications has placed your account with us for collections.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Late payments, missed payments, or other defaults on your account may be reflected in your credit report. However, we will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the 30-day time period described in this letter.

Subject to your rights described above, please visit our website at my.waypoint.com or call us toll free at (844) 687-3255 for additional information regarding your account or to discuss other repayment options for your account.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

Sincerely,
Waypoint Resource Group LLC

**EXHIBIT D**
**Plaintiff's dispute letter to Waypoint- February 3, 2020**

Waypoint
PO Box 8588
Round Rock, TX 78683-8588


RE: Account #5313737
Charter CommunicationS

To whom it may concern:

This account is in disputed. The balance has been paid in full or overpaid. Do not contact me in future
regarding this matter please close your file or contact my attorney The Consumer Protection Firm
William Howard at 4030 Henderson Blvd Tampa Fl 33629


Thank you


Mike Trueheart

2/3/2020

## EXHIBIT E
### Credit Karma alert regarding Waypoint reporting Debt

## There's a new collection account on your credit report



Hi Mike,

A new collection account with **WAYPOINT RESOURCE GROUP** was added to your Equifax credit report.[1]

Collection accounts can do some harm to your credit score, so you'll want to verify that this information is correct. If it is, you could consider negotiating to pay off your debt.

See the Account

Best,

**The Credit Karma Team**

[1] *Based on your credit report information from Equifax as reported on 02/27/20.*

  This is a promotional email. To manage your Credit Karma emails, please go to your Communication & Monitoring Preferences.

**EXHIBIT F**
## Plaintiff's dispute through Trans Union to Waypoint March 9, 2020

Loans

# Dispute center

In partnership with TransUnion

| 1 | 2 | 3 |
|---|---|---|
| Sent to TransUnion | In review | Completed |

## The results are in from your latest dispute.

If TransUnion was able to make changes to your credit report based on information you provided, they made those changes. Otherwise, TransUnion asked the company reporting the information you disputed to investigate.  Learn more →

**STATUS DETAILS:**

Submitted on
**3/9/2020**

File number
**388545935**

Completed on
**3/17/2020**

**ITEM IN DISPUTE:**

**WAYPOINT RESOURCE GROUP**
11 CHARTER BRIGHT HOUSE

# EXHIBIT G
## CBE Collection Letter- May 1, 2020



The CBE Group, Inc.
1309 Technology Pkwy, Cedar Falls, IA 50613
Monday-Thur 7am-8pm
Friday 7am-6pm

05/01/20

| | |
|---|---|
| Call: | (866)913-3133 |
| Creditor: | Charter Communications |
| Account Number: | 440913203 |
| CS Number: | 21-74253734 |
| Reference Number: | 0307 |

**Total Amount Due: $126.24**

Dear Mike Trueheart :



Pay Online –
Account resolution
The easy way:

Login to your account at
**www.paycbegroup.com**
to quickly and easily pay your
balance in full or setup payment
arrangements.

Your Charter Communications account has been referred to CBE Group for collection. Please take this opportunity to pay your account balance in full.

We are committed to helping you resolve your debt. If you cannot pay the full balance at this time, we have many payment options that may meet your individual needs. Please give us a call at (866)913-3133. We are here to help.

**ACCOUNT SUMMARY:**

| Disconnect Date | Service/Equipment | Total Due |
|---|---|---|
| 09/12/19 | SERVICE AMOUNT | $126.24 |
| | Equipment | $0.00 |
| | Total Amount Due: | $126.24 |

Service Address: 720 S LAKE FLORENCE DR WINTER HAVEN, FL 338842250

**Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within thirty (30) days after receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.**

The CBE Group, Inc. mailing address Po Box 2635 , Waterloo, IA 50704-2635

**This is an attempt to collect a debt; any information obtained will be used for that purpose.
This communication is from a debt collector.**

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

PLEASE DETACH AND RETURN LOWER PORTION WITH ENCLOSED ENVELOPE                                    29_CDCBEG04_0307

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PO BOX 2635
WATERLOO, IA 50704-2635
CHANGE SERVICE REQUESTED



IF PAYING BY CREDIT DEBIT, FILL OUT BELOW

| CARD NUMBER | EXP DATE | SELECT CARD USED FOR PAYMENT |
| SIGNATURE | | VISA |
| PAYMENT AMOUNT | | |

ACCT#: 440913203   CS #:21-74253734   REF #:0307   DATE: 05/01/20

CALL: (866)913-3133
2174253734-1-393-41149698



532827376

Mike Trueheart



THE CBE GROUP, INC.
Payment Processing Center
PO Box 300
Waterloo, IA 50704-0300

21  07425373400000393 000000012624 050120 307 7

# EXHIBIT H
## Amsher Collection Letter- January 2, 2021



AMSHER COLLECTION SERVICES, INC.
4524 SOUTHLAKE PARKWAY, SUITE 15
BIRMINGHAM, AL 35244

Mon - Thurs 8:00AM to 7:00PM CST
Friday 8:00AM to 5:30PM CST
1-877-606-1350



January 2, 2021

Mike Trueheart

**Redacted**

The account referenced here is unpaid and the balance owed has been placed with this office for collection.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

We can offer you an opportunity to resolve your account with CHARTER COMMUNICATIONS LLC for the amount of $94.68. This amount must be paid in one payment and is valid until 02/16/2021. This will be a savings of $31.56 to you.

We are not obligated to renew this offer. Acceptance or rejection of this offer will not affect your right to dispute the validity of this debt or any portion thereof.

Mail payment to 4524 Southlake Parkway, Suite 15, Hoover, AL 35244. Our phone number is 1-877-606-1350. Our office accepts most credit cards, debit cards and checks over the telephone.

**This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.**

Nick Jackson

Director of Operations

| Account Summary | | |
| --- | --- | --- |
| *Original Creditor* | | |
| CHARTER COMMUNICATIONS LLC | | |
| *Current Creditor* | | |
| CHARTER COMMUNICATIONS LLC | | |
| *Creditor's Acct #* | | |
| 440913203 | | |
| *AmSher Acct #* | | |
| 28899251 | | |
| *Total Due* | | |
| $126.24 | | |



Scan this code with your smartphone to pay your bill online

AMSHER.wfd 144 901598 00003871

**EXHIBIT I**
**Plaintiff's Trans Union Consumer Disclosure-Excerpt Inquiries**
**January 21, 2021**



**TransUnion**

**Personal Credit Report for Micahel trueheart**

Report Date: 04/21/2021
Source: TransUnion

File Number: 418571029

You have been on our files since 05/31/1968
Date of Birth: Redacted

SSN Redacted

**Names Reported:** MICHAEL WAYNE TRUEHEART, MICAHEL W. TRUEHEART, LISA M. TRUEHEART and MICHEAL W. TRUEHEART

**Addresses Reported:**
Address          Date Reported
Redacted

**Telephone Numbers Reported:**
Redacted

**Employment Data Reported:**

The information regarding adjustable rate mortgages was obtained from public records and appears on your report. TransUnion uses a vendor to collect Adjustable Rate Mortgage ("ARM") information from public record sources. This ARM data may be included in your report when it is requested by TransUnion customers qualified to receive it. The information was obtained from the Recorder's Office in the jurisdiction and state specified. None of these items contains adverse information; they are simply a listing of the information filed in the Recorder's Office concerning your adjustable rate mortgage.

**MORTGAGE DETAILS FROM PUBLIC RECORD**

| | | | |
|---|---|---|---|
| Origination Date: | 04/2006 | Loan Amount: | $275,000 |
| Initial Rate Adjustment: | 06/2006 | Initial Interest Rate: | 1.25% |
| Next Rate Change Date: | 02/2021 | Rate Calculation Changes | 2.4500% |
| Rate Change Frequency: | Monthly | Change Percent Limit: | 0.0% |
| Rate Change Interval: | 1 | First Rate Change Cap: | 0.0000% |
| Index Type: | MONTHLY TREASURY AVERAGE | Maximum Rate: | 9.9500% |
| | | Combined Loan to Value: | 80.000% |

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The key(s) below are provided to help you understand some of the account information that could be reported.

**Rating Key**
Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. Please note: Some but not all of these ratings may be present in your credit report.

| N/R | X | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120 days late | Collection | Voluntary Surrender | Repo-ssession | Charge Off Foreclosure |

Adverse information typically remains on your credit file for up to 7 years from the date of the delinquency. To help you understand what is generally considered adverse, we have added ▶brackets◀ to those items in this report. For your protection, your account numbers have been partially masked, and in some cases scrambled. Please note: Accounts are reported as 'Current; Paid or paying as agreed' if paid within 30 days of the due date. Accounts reported as Current may still show late fees or interest charges if not paid on or before the due date. For any account that contains medical information, the information following 'Medical-' is not displayed to anyone but you except where permitted by law.



Redacted

**EXHIBIT I**
**Plaintiff's Trans Union Consumer Disclosure-Excerpt Inquiries**
**January 21, 2021**



AMSHER COLLECTIONS
4524 SOUTHLAKE PARKWAY
SUITE 15
HOOVER, AL 35244
(800) 955-7632
Requested On: 01/21/2021

The following disclosure of information might pertain to you. This additional information may include Special Messages, Office of Foreign Assets Control ("OFAC") Potential Name Matches, Inquiry Analysis, Military Lending Act ("MLA") Covered Borrower Information, and/or Third Party Supplemental Information. Authorized parties may also receive the additional information below from TransUnion.